IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| ex rel. RICHARDSON-EAGLE, | § | |
| INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-05-0411 |
| MARSH & McLENNAN COMPANIES, | § | |
| INC., MARSH, INC., MERCER | § | |
| HUMAN RESOURCES CONSULTING, | § | |
| INC., and MERCER HUMAN | § | |
| RESOURCES CONSULTING OF | § | |
| TEXAS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are the Motion to Dismiss and Brief in Support of Defendants Marsh & McLennan Companies, Inc., Marsh, Inc., Mercer Human Resource Consulting, Inc., and Mercer Human Resource Consulting of Texas, Inc. (collectively, "Mercer") (Docket Entry No. 16); Richardson-Eagle's Response and Alternative Motion for Leave to File an Amended Complaint (Docket Entry No. 20); and Reply Brief of Defendants in Support of Their Motion to Dismiss (Docket Entry No. 21). For the reasons stated below, Mercer's Motion to Dismiss (Docket Entry No. 16) will be granted, and Richardson-Eagle's Alternative Motion for Leave to File an Amended Complaint (Docket Entry No. 20) will be denied.

## I. **Background**

Richardson-Eagle filed this *qui tam* action on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.  The United States has declined to intervene under 31 U.S.C. § 3730(b)(2), leaving Richardson-Eagle as the sole plaintiff in this action.

Richardson-Eagle alleges the following relevant facts in its Complaint.  (Docket Entry No. 3)  Mercer has been an insurance agent and broker for Houston Independent School District ("HISD") since 1999, consulting on benefits recommendations and administration.  (Complaint ¶ 11)  In the summer of 2000 Mercer became the Employee Welfare and Benefits Administration Outsourcing Consultant ("Benefits Outsource Consultant").  (Complaint ¶ 15) William M. Mercer, Inc. was the actual party to the agreement.[1] (Complaint ¶ 23)  Neither it nor any of the other defendants were licensed as a Life & Health Counselor under Texas law during the relevant time period.  (Complaint ¶ 13)

In its capacity as Benefits Outsource Consultant, Mercer provided analysis of risk and insurance options, procurement and renewal of insurance, interpretation of insurance policies and monitoring of the insurance industry on HISD's behalf.  (Complaint ¶ 16)  Mercer brokered a wide array of insurance lines for HISD,

---

[1]William H. Mercer, Inc. is no longer in existence.  Mercer Human Resources Consulting, Inc., is the successor entity. (Complaint FN3)

-2-

including health benefits and numerous voluntary products that HISD purchases with the use of federal funding, as well as out-of-pocket employee funds.  (Complaint ¶ 17)

In August of 2000 Mercer issued HISD's request for proposal for disability, hospital indemnity, and cancer voluntary insurance policies.  (Complaint ¶ 25)  Mercer's request for proposal was designed to eliminate insurance brokers and the requisite payment of their commissions for HISD.  (Complaint ¶ 27)  The Standard Insurance Company submitted a proposal that included Richardson-Eagle as broker, agreeing to pay Richardson-Eagle fifteen percent.  (Complaint ¶¶ 28-29)  When Richardson-Eagle refused to lower its commission at Mercer's request, Mercer negotiated directly with the Standard Insurance Company, convincing it to unilaterally lower Richardson-Eagle's commission.  (Complaint ¶¶ 30-33)  Richardson-Eagle lost several other commissions and potential commissions as a result of Mercer's actions.  (Complaint ¶¶ 37-45)

Mercer also solicited insurance commissions from the insurance providers doing business with HISD.  (Complaint ¶ 41)  To the extent it received insurance commissions, it would rebate those commissions to HISD.  (Complaint ¶ 39)  This helped Mercer meet its performance guarantees in its contract with HISD, thus ensuring its receipt of consulting fees from HISD.  (Complaint ¶ 40)  Mercer also shared commissions with HISD, a party not licensed by the Texas Insurance Commission.  (Complaint ¶ 47)  Through use of an

-3-

interlocal agreement and a venture called the Texas Healthcare Partnership, HISD assisted Mercer in marketing its services to other Texas school districts.  (Complaint ¶ 48)  Mercer now has additional contracts with Aldine I.S.D., Katy I.S.D., and Dallas I.S.D.  (Complaint ¶ 48)

## II.  <u>Standard of Review</u>

### A.  Rule 12(b)(6)

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the district court must accept the factual allegations in the complaint as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom</u> <u>Cloud v. United States</u>, 122 S.Ct. 2665 (2002).  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 998 (2002) (quoting <u>Hishon v. King & Spaulding</u>, 104 S.Ct. 2229, 2232 (1984)).  <u>See also</u> <u>Conley v. Gibson</u>, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him to relief.").

"However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" <u>Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana</u>, 252 F.3d 781, 786 (5th Cir.) (quoting <u>Fernandez-Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir. 1993)), <u>cert. denied</u>, 122 S. Ct. 464 (2001). Complaints "'must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" <u>Campbell v. City of San Antonio</u>, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 3 Charles Alan Wright & Arthur Miller, <u>Federal Practice and Procedure</u> § 1216 (2d ed. 1990)).  While dismissal of a claim under Rule 12(b)(6) is generally disfavored, the court should exercise its power to dismiss a complaint if it lacks an allegation regarding an element required to obtain relief.  <u>Blackburn v. City of Marshall</u>, 42 F.3d 925, 931 (5th Cir. 1995) (citations omitted).

**B.   Rule 9(b)**

"The complaint in a False Claims Act suit must fulfill the requirements of Rule 9(b)." <u>United States ex rel. Russell v. Epic Healthcare Management Group</u>, 193 F.3d 304, 308 (5th Cir. 1999). Rule 9(b) states that "[i]n all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of a mind of a person may be averred generally."  A plaintiff pleading fraud must set forth the "'time, place and contents of the false misrepresentations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" <u>Russell</u>, 193 F.3d at 308 (quoting <u>Williams v. WMX Technologies, Inc.</u>, 112 F.3d 175, 177 (5th Cir. 1997)).  In other words, the plaintiff must specify the "who, what, when, where and how of the alleged fraud."  <u>United States ex rel. Willard v. Humana Health Plan of Texas, Inc.</u>, 336 F.3d 375, 384 (5th Cir. 2003) (citations omitted).[2]  A dismissal for failure to state fraud with particularity is a dismissal on the pleadings for failure to state a claim under Rule 12(b)(6).  <u>Russell</u>, 193 F.3d at 308.

### III.  <u>Analysis</u>

Mercer has moved to dismiss both of Richardson-Eagle's complaints under Federal Rule of Civil Procedure 12(b)(6) on the ground that Richardson-Eagle has failed to state a claim upon which

---

[2]Although the Rule 9(b) requirements may be pleaded on information and belief when the facts related to the alleged fraud are peculiarly within the perpetrator's knowledge, <u>United States ex rel. Williams v. Helicopter Textron, Inc.</u>, 417 F.3d 450, 454 (5th Cir. 2005), Richardson-Eagle has conceded that "[a] majority of the facts are already known and now it is a matter of pinning down the intricacies of the FCA." Relator's Response, Docket Entry No. 20, p. 22.  Only a handful of facts in the Complaint are pleaded on information and belief.

relief can be granted.  First, Mercer argues that Richardson-Eagle did not plead the presentation of a false claim to the government for payment or reimbursement from federal funds.  Mercer argues that the only presentation was to HISD, which is merely an entity that receives federal funds.  Second, Mercer argues that Richardson-Eagle did not plead fraud with the required particularity.  Specifically, Mercer argues that Richardson-Eagle did not allege that defendants made any false statements or certifications to HISD, thus failing to allege a false claim.[3]

## A.   The False Claims Act

Under the FCA "a private party may sue on behalf of the government 'to recover for false claims made by the defendants to secure payment by the [g]overnment.'"  <u>United States ex rel. Williams v. Bell Helicopters Textron, Inc.</u>, 417 F.3d 450, 453 (5th Cir. 2005) (quoting <u>United States ex rel. Doe v. Dow Chemical Co.</u>, 343 F.3d 325, 329 (5th Cir. 2003)).  The relevant portions of the FCA, 31 U.S.C. § 3729(a)(2) & (3) read as follows:

(2)  [any person who] knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]

_____

[3]Although Richardson-Eagle's complaint alleges that Mercer violated the FCA in its actions with respect to HISD and other Texas school districts, Richardson-Eagle only alleges supporting details for HISD.  The court, viewing the complaint in the light most favorable to Richardson-Eagle, will therefore examine the Motion to Dismiss in terms of Mercer's involvement with HISD.

-7-

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

. . .

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . .

Claim is defined by 31 U.S.C. § 3728(c) as

any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

To establish liability under § 3729(a) of the FCA a plaintiff must show that (1) the claimant presented, caused to be presented, or conspired to have presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the claimant knew the claim was false or fraudulent. See United States v. Medica-Rents Co., 285 F.Supp.2d 742, 769 (N.D. Tex. 2003); United States ex rel. Wilkins v. North American Construction Corp., 173 F.Supp.2d 601, 619 (S.D. Tex. 2001).

Richardson-Eagle asserts causes of action under § 3729(a)(2) and § 3729(a)(3). Under § 3729(a)(2) the plaintiff must show that a false claim was submitted and that a false statement or record was made or used to get that false claim paid. United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899,

-8-

903 (5th Cir. 1997).  To state a claim under § 3729(a)(3) the plaintiff must show (1) that the defendant agreed with one or more persons to get a false or fraudulent claim allowed or paid by the United States, and (2) that one or more conspirators performed any act to effect the object of the conspiracy.  U.S. ex rel. Graves v. ITT Educational Services, Inc., 284 F.Supp.2d 487, 509 (S.D. Tex. 2003).

**B.   The Payment of Federal Funds**

Under the FCA a request for payment is a claim "if the United States Government provides any portion of the money . . . or if the Government will reimburse such contractor, grantee, or other recipient for any portion" of the money.  31 U.S.C. § 3729(c).  This definition, developed in the wake of court decisions such as United States v. Azzarelli Construction Co., 647 F.2d 757 (7th Cir. 1981), has been recognized by courts as a Congressional effort to broaden the scope of the FCA to encompass not only claims that are made directly on the federal government, but claims made on grantees that use federal government funds for payment of the claims.  See, e.g., United States ex rel. Koch v. Koch Industries, Inc., 57 F.Supp.2d 1122, 1128 (N.D. Okla. 1999); S.Rep. 99-345, at 22 (1986).  The request or demand for money must be made to someone "who will at least in part use government money or property to pay it."  United States v. Southland Management Corp., 326 F.3d 669, 674 (5th Cir. 2003).  Even under the current broad definition of

"claim" the requirement of some loss to the federal government remains.

Mercer argues that Richardson-Eagle failed to plead a claim for the payment of federal funds. (Motion to Dismiss, p. 9)  To evaluate this argument the court looks to the complaint for Richardson-Eagle's allegations regarding federal funds. Richardson-Eagle alleges:

1.  That the claim is "arising from Defendants' false and/or fraudulent claims for payment from the United States Government that were paid by and through its funding of programs" at HISD and other school districts in Texas.  (Complaint ¶ 8)

2.  Mercer's actions resulted "in the payment of federal funds that are provided to various Texas school districts." (Complaint ¶ 12)

3.  "Defendants have retained federal funds through ill-gotten gains via illegal and fraudulent conduct." (Complaint ¶ 13)

4.  "Mercer receives approximately $500,000 per month to act as HISD's Benefits Outsource Consultant.  Mercer projects HISD will pay in excess of $21 million under the Consultant Agreement through 2005." (Complaint ¶ 22)

5.  Mercer "fraudulently requested payment from HISD through funds provided by the federal government." (Complaint ¶ 40)

6.  "[M]illions of federal dollars are flowing to some of the largest Texas school districts to assist with benefits and

insurance payments that go straight into Defendants' pockets based on fraudulent claims." (Complaint ¶ 48)

7. One of Mercer's associates "conspired with Mercer to engage in the plan to bilk millions of federal dollars that were supposed to be used by Texas school districts for the education of children." (Complaint ¶ 49)

8. "Defendants manipulated the school district market to the detriment of various Texas school districts who use federal dollars to fund at least a portion of the benefits program." (Complaint ¶ 62)

The complaint is sufficient to establish that HISD receives federal funds, but fails to plead facts sufficient to establish that those federal funds were used to pay Mercer. Absent from the complaint is any information regarding how Mercer's bills to HISD equaled a bill for federal funds. The complaint does not identify any federal program providing the funds that HISD used to pay Mercer's fees. It does not allege that HISD applied for reimbursement from the federal government for payment of Mercer's fees. The complaint does not offer any facts to illustrate how the federal monies flowing to Texas school districts were used to pay Mercer.

In its response Richardson-Eagle states that it cannot determine the exact portion of federal government dollars that HISD used to pay Mercer's fees until further discovery has been

conducted.   (Response, p. 8)   Richardson-Eagle attached HISD's budget to its response, and noted that anywhere from $105,000,000 to $185,000,000 of HISD's total budget came from federal funds in the past several years.   Id. at Exhibit A.   However, as Mercer points out, HISD's total revenue for that period was approximately $1.5 billion dollars, making the federal contribution a small portion of the total.   (Reply, p. 6)   The HISD budget attached to Richardson-Eagle's Response shows that the majority of the federal funds allocated to HISD were for specified educational tasks.   Id.[4] The complaint is deficient because it fails to provide facts supporting its belief that HISD used any federal funds to pay Mercer's fees, other than the fact that HISD receives a portion of its funding from the federal government.

To accept Richardson-Eagle's pleadings as sufficient the court would have to conclude that an FCA cause of action can lie against a defendant that makes a demand against any entity that receives federal funds, regardless of whether those funds were used to pay the defendant.   The court has found no authority for this broad a reading of the FCA.   A bare allegation that an entity receives a minority portion of its funding from the federal government,

---

[4]The budget submitted to the court shows, for example, at pages 4 and 5, that for fiscal year 2001-2002, HISD received $104,491,254 from the federal government for specified educational tasks out of a total of $134,544,216 for such purposes, and $4,839,467 from the federal government out of a total of $1,220,087,481 for HISD's general fund.

without more, is not a sufficient factual basis for pleading that an entity paid the defendant's claim with federal dollars.

Mercer also argues that Richardson-Eagle's claim fails because it did not present a false or fraudulent claim for payment "to an officer or employee of the United States government." 31 U.S.C. § 3729(a)(1). Although Richardson-Eagle asserts a § 3729(a)(2) rather than a § 3729(a)(1) cause of action, Mercer argues that the presentment requirement applies to both subsections. See United States ex rel. Totten v. Bombadier, 380 F.3d 488 (D.C. Cir. 2004) (holding that for FCA liability under §§ 3729(a)(1) and (a)(2) to attach, a false claim must be presented to an officer of the government). Because the court agrees that Richardson-Eagle has not sufficiently pleaded a call upon the government fisc, the court need not reach the issue of whether presentment to an entity that receives some federal funds satisfies the FCA requirement of presentment to an officer or employee of the United States Government under 31 U.S.C. § 3729(a)(2), an issue that has not been decided by the Fifth Circuit.

## C.   **False Claim**

Even if Richardson-Eagle had or could properly allege payment from federal funds, the complaint fails to establish an essential element of a FCA claim:  a false certification or record used to get a false claim paid. "[T]he False Claims Act was not designed

to reach every kind of fraud practiced on the government." United States v. McNich, 78 S.Ct. 950, 953 (1958). The statute requires that the claimant make "a false record or statement to get a false or fraudulent claim paid" by the government. 31 U.S.C. § 3729(a)(2). The FCA attaches liability not to the underlying fraudulent activity, but rather to the claim for payment that the defendant knowingly makes on the government as a result of the fraudulent activity. Willard, 336 F.3d at 381.

The classic FCA violation of "government contractors' billing for nonexistent or worthless goods or charging exorbitant prices for delivered goods" is not alleged here. See United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 460 (5th Cir. 1977). Rather, Richardson-Eagle proceeds under a certification theory to allege an FCA violation. This type of FCA violation occurs when payment of a claim is conditioned upon a claimant's certification of compliance with a federal statute, regulation, or contractual term that is a prerequisite to payment. Thompson, 125 F.3d at 902. In Thompson the defendants were required to certify in annual cost reports, as a condition of their participation in the Medicare program, that the services identified in the cost reports were provided in compliance with the laws and regulations regarding the provision of healthcare services. Id. at 903. The relator alleged that defendants certified falsely that they complied with these laws and regulations. Id. The Fifth Circuit

-14-

remanded the case for determination of whether payment for services identified in the cost reports was conditioned on defendants' certifications of compliance, without ruling on whether violations of the laws themselves were false or fraudulent claims under the FCA independent of any certification.  Id.

The Fifth Circuit's later jurisprudence has not determined whether FCA liability can be based on an implied certification theory.  See, e.g., United States ex rel. Stebner v. Stewart & Stephenson Services, Inc., 144 Fed.Appx. 389, 394 (5th Cir. 2005) (not designated for publication) (noting that "[o]ur court has not adopted an implied theory of certification"); United States ex rel. Graves v. ITT Educational Services, Inc., 111 Fed.Appx. 296, 297 FN2 (5th Cir. 2004) (not designated for publication).  The Fifth Circuit in Willard explicitly stated that "[w]hile this circuit has decided cases dealing with FCA liability based on express certifi- cations of compliance with various statutes and regulations, we have not specifically addressed whether FCA liability can be based on an 'implied certification' theory."  Willard, 336 F.3d at 381.

In Willard the relator sued Humana, an HMO, under the FCA, alleging that the HMO engaged in a scheme to discourage people who were less healthy and those in non-favored geographical areas from joining Humana's HMO.  Id. at 378.  Willard did not allege any actual false statements in the claims.  Id. at 381.  As the Fifth Circuit explained, quoting this court, "'[i]mplied certification'

-15-

amounts to nothing more than an alternative expression of the well-accepted idea that billing the government for something not delivered may constitute a false claim.  If the government defines its bargain in a manner that requires adherence to a statute or regulation, compliance with that statute or regulation is implied by virtue of a request for payment." Id. at 382.  The Fifth Circuit declined to reach the merits of the implied certification theory of liability because it determined that Willard failed to show that the government conditioned its payment to Humana on any implied certification of compliance with the regulatory provisions at issue, and because Willard did not allege facts sufficient to reflect that there was any regulatory violation.  Id.

The court has examined the complaint for allegations that support certification, either express or implied.  In addition to the general allegation, peppered throughout the complaint, that Mercer did not have an insurance license as required by Texas law and that Mercer engaged in third-party contingent commissions ("third-party commissions"), Richardson-Eagle makes the following specific allegations:

1.  "Mercer claims it will:  (1) represent the interests of its clients--HISD and the other school districts--in transactions with insurers; (2) act on behalf of its clients in the placement of insurance and the negotiation of the terms; and (3) act as the 'exclusive agent of record' for its clients."  (Complaint ¶ 17)

2.   "The representations regarding Mercer's role have been communicated to HISD through verbal communications, websites and other materials . . ." (Complaint ¶ 19)

3.   "Mercer made monetary promises to people involved with HISD benefits to help them get the business." (Complaint ¶ 21)

4.   "Defendants knowingly made, used, or caused to be made false records or statements to get a false or fraudulent claim paid or approved by the Government." (Complaint ¶ 52)

5.   "Defendants submitted invoices for payment by HISD claiming to represent their interests as their insurance consultant when they benefitted through side contingent agreements and illegal activity as described herein." (Complaint ¶ 53)

6.   Defendants "also submitted false statements as to their authority and/or ability to act as insurance agents on behalf of HISD while also acting as an agent on behalf of the insurance companies." (Complaint ¶ 54)

Richardson-Eagle's allegations are insufficient to support its express certification theory.  There are no particular allegations about (1) when the representations were made, (2) what promises Mercer made, (3) how Mercer's promises helped in obtaining HISD's business, (4) what form Mercer's false statement as to its ability to act as an insurance agent on behalf of HISD took, (5) to whom Mercer made these statements, and (6) the contents of these statements.  Notably absent is any allegation that Mercer's

-17-

invoices certified compliance with the contract provisions or the Texas licensing statutes in its bills to HISD.[5]  Nor does Richardson-Eagle allege facts necessary for express certification in any other form, such as an ancillary document submitted to HISD.

Because Richardson-Eagle does not allege sufficient facts to support express certification, it must rely on an implied certification theory.  Richardson-Eagle argues two bases to support its contention that Mercer made implied false certifications: first, that Mercer submitted invoices without having the proper license; and second, that Mercer failed to comply with the contract provisions requiring it to disclose conflicts of interest and gifts.  (Response, pp. 8-19)

1.  <u>Statutory Violations</u>

Richardson-Eagle argues that Mercer violated various sections of the Texas Insurance Code and Texas Education Code.[6]  As to the

---

[5]In fact, Richardson-Eagle does not even allege the timing of the monthly invoices in its complaint.  The court learned this information from reading its response.  (Response, p. 20)

[6]Specifically, Richardson-Eagle alleges violation of Tex. Ins. Code Ann. arts. 21.01 § 2, 21.01-2 § 2A(b) and § 2A(h) (failing to have the required insurance licenses), 21.07-2 § 4a and 21.01-2 § 2A(a) (receiving commissions from an insurance provider providing services to HISD while at the same time receiving a fee based on the same services as a Life and Health Counselor for HISD), 21.01-2 § 2A(d)(2) (receiving commissions from an insurance company without being licensed as one of their agents), 21.01-2 § 2A(c), 21.01-2 § 3A(c)(9), 21.21 § 4(8), 21.21A § 1 and 5.20 (rebating commissions to HISD), 21.21 § 4(2) (disseminating untrue or misleading

(continued...)

licensure issue, Richardson-Eagle argues that its pleadings suffice "[b]ecause the contracting party did not have the proper license and all work performed under the Consultant Agreement was illegal and therefore it was false and fraudulent to submit invoices to receive payments for work Mercer was legally unable to do." (Response, p. 12)  Even assuming that implied certification is a viable legal theory, this argument is too simplistic, and omits a necessary step.  In the absence of an express false certification, Mercer must have received a payment conditioned on an unmet regulatory or legal requirement.  Richardson-Eagle spells out in some detail, both in its complaint and its response, why Mercer's actions violated Texas statutes.  Richardson-Eagle fails, however, to explain how payment by HISD was conditioned on Mercer's compliance with those statutes.  Instead, it likens operating without an insurance license to a physician operating without a medical license.  (Response, p. 16)

---

[6](...continued)
statements) (As part of the recodification process, the Texas Legislature has moved all of the relevant sections of the Texas Insurance Code, except art. 5.20, from articles 21.01 and 21.21 to Chapters 4052 and 541 of the Texas Insurance Code.), and of the TEX. EDUC. CODE ANN. 44.031 (being designated the "exclusive agent of record" for HISD and failing to obtain the best value for the school district).  Richardson-Eagle also alleges breach of fiduciary duty.  Response, p. 20.

Since Mercer does not argue that Richardson-Eagle failed to allege state law violations in its Motion to Dismiss, the court will not examine whether the pleadings support the allegations of statutory violation in this 12(b)(6) motion.

Richardson-Eagle cites <u>United States ex rel. Riley v. St. Luke's Episcopal Hospital</u>, 355 F.3d 370 (5th Cir. 2004), a case in which the court found that allegations regarding medical services being performed by an unlicensed physician lacking authority or supervision were sufficient to satisfy the certification requirement without resorting to an implied certification theory. <u>Id.</u> at 379. Richardson-Eagle's reliance on <u>Riley</u> is unavailing because the facts in <u>Riley</u> are distinguishable from those alleged in this complaint.

In <u>Riley</u> the relator alleged, among other things, that the defendants filed false claims with Medicare and the Civil Health and Medical Program of the Uniformed Services (CHAMPUS) for services that were rendered by an unlicensed physician. <u>Id.</u> at 373. The <u>Riley</u> defendants made a deliberate effort to conceal the fact that an unlicensed physician was providing care, and hid the unlicensed physician's services in false billings to Medicare and CHAMPUS. <u>Id.</u> at 379. Unlike <u>Riley</u>, there is no allegation here that Mercer concealed its lack of an insurance license from HISD, or that HISD's payment was predicated on Mercer's having an insurance license. The facts alleged by the complaint do not support any actual misrepresentation by Mercer to HISD concerning Mercer's licensure status.

Because Richardson-Eagle's complaint does not allege that compliance with the statutory licensing requirement was a

-20-

prerequisite to receiving payment from HISD, the complaint does not establish the link between the statutory requirement and the payment.  As Richardson-Eagle concedes, Mercer's alleged violation of Texas law alone does not necessarily comprise an FCA violation. (Response, p. 15)  In other words, Richardson-Eagle has failed to allege that HISD's payment was conditioned on certification, implied or otherwise, by Mercer.  No allegation in the complaint establishes that compliance with the statutes was a requirement for payment under the contract.  Without such an allegation, Richardson-Eagle cannot proceed even under the implied certification theory, which is as yet unrecognized in the Fifth Circuit.

    2.  <u>Contract Provisions</u>

    Richardson-Eagle also argues that by failing to reveal its third-party commissions, Mercer violated the conflict of interest and disclosure provisions of the contract.  (Response, pp. 17-19) The contract states:

> **CONFLICTS OF INTEREST.**  Consultant agrees to provide 30 days prior written notice to Client detailing any arrangement or agreement between Consultant and any 3rd party currently existing, where the arrangement or agreement is related to the Services provided under this Agreement and where such relationship creates or reasonably could be anticipated to create an opportunity for Consultant to benefit financially or in any other material manner from Client's contract with the 3rd party.

Health and Welfare Benefits Consulting and Administration Agreement, Response, Docket Entry No. 20, Attachment B, § 18.

> **DISCLOSURE.** Consultant acknowledges that it must immediately disclose . . . any agreement between it and any third party whereby consideration appears to be wholly or partly for any commission . . . which have been given as a result of entering into this Agreement. Consultant acknowledges that final determination of its violation of this section resides . . . [with] Client. Consultant . . . agrees that the violation of this section as determined by Client provides Client, at Client's option, with the remedy of (i) a refund by Consultant to Client, the refund consisting of the value of the Gift . . . ; or (ii) termination of this Agreement For Cause . . . .  Consultant further acknowledges its duty to confirm  in writing to Client its compliance with this Section 19, from time to time, upon request by Client.

Id. at § 19.  By failing to disclose its conflicts of interests, Richardson-Eagle argues that every invoice Mercer submitted was a false representation that it had received no other compensation related to its services.  Despite advancing this argument in its response, Richardson-Eagle's pleadings do not support this interpretation.

The complaint does not contain a factual basis in support of Richardson-Eagle's contention.  Although the complaint has numerous allegations that Mercer failed by serve HISD's best interests by receipt of third-party commissions, the only allegation touching on disclosure states that Mercer "failed to disclose the material facts and circumstances concerning such contingent commissions." (Complaint ¶ 57)  This does not allege that Mercer kept the

<u>existence</u> of the third-party commissions from HISD.  In fact, the pleadings contradict any concealment by Mercer of its receipt of third-party commissions.  The complaint alleges that "Mercer has persuaded HISD to engage in the same fraudulent scheme with promises of an economical [sic] windfall and is now illegally sharing commissions with HISD--a non-licensed party."  (Complaint ¶ 47)  It also alleges that Mercer rebated HISD's payment to the extent it received third-party commissions.  (Complaint ¶ 39)  For Mercer to rebate the third-party commissions with HISD and share the third-party commissions with HISD, it must have informed HISD of the existence of these commissions.

Moreover, the remedies for nondisclosure provided by the contract are refund of the value of the gift and contract termination.  There is no authority for withholding payments for services that Mercer had already performed, which undermines the basis for implied certification -- that payment was conditioned on the disclosures.

**D.   Fraud in the Inducement**

In its response, Richardson-Eagles argues that its claim is viable under the fraud in the inducement theory of FCA liability. Fraud in the inducement occurs when a defendant enters into a contract with no intention of performing the contract, or when the contract was originally obtained by false statements or fraudulent

conduct.  See United States ex rel. Marcus v. Hess, 63 S.Ct. 379 (1943); Willard, 336 F.3d at 384.  In such a case, even if the claims for payment are accurate, the antecedent fraud renders each claim submitted false or fraudulent.  Hess, 63 S.Ct. at 384.  The fraudulent conduct must have been material to the decision to enter into the contract.  See United States v. Medica-Rents Co., 285 F.Supp.2d 742, 769 (N.D. Tex. 2003); United States ex rel. Wilkins v. North American Construction Corp., 173 F.Supp.2d 601, 619-30 (S.D. Tex. 2001).  Although the Fifth Circuit has not established the degree of materiality required in FCA claims, any issues of degree are irrelevant because Richardson-Eagle has failed to plead that Mercer's alleged fraud had any effect at all on HISD's decision to enter into the contract.  See United States v. Southland Management Corp., 288 F.3d 665, 675-78 (5th Cir.) (detailing debate over required degree of materiality), vacated by granting of reh'g en banc, 307 F.3d 352 (5th Cir. 2002) (en banc).

Richardson-Eagle argues in its Response that its complaint supports fraud in the inducement. (Response, pp. 20-21) The court notes that Richardson-Eagle does not point the court to any particular language in the complaint alleging fraud in the inducement.  According to Richardson-Eagle's response, by failing to disclose that it lacked the necessary licenses and that it was receiving secret contingent commissions, Mercer fraudulently

-24-

induced HISD to enter into the Benefits Outsource Contract. Richardson-Eagle does not argue that Mercer made false certifications or statements to induce HISD to enter into the contract, but argues that Mercer's failure to disclose its lack of licensing and receipt of third-party commissions induced HISD to enter into the contract.  Richardson-Eagle premises its fraud in the inducement theory on an implied certification theory.  The court has already discussed the problems with Richardson-Eagle proceeding on an implied certifica-tion theory.

Moreover, Richardson-Eagle's complaint does not allege fraud in the inducement with the particularity required by Rule 9(b). Richardson-Eagle's fraud in the inducement claim is devoid of a single fact to support the idea that Mercer induced HISD to enter the contract.  The complaint does not allege who was involved in the contract negotiations, or where and when the negotiations took place.  There are no facts alleged as to what was said before, during, or after the contract negotiations to indicate that HISD would not have entered into the contract had it known of Mercer's unlicensed status and receipt of third-party commissions.  In short, Richardson-Eagle did not allege factual support for its contention that Mercer's failure to comply with licensing requirements or to disclose third-party contingent agreements had

-25-

any effect on HISD's decision to enter into the contract.[7] Richardson-Eagle cannot sustain a fraud in the inducement theory of FCA liability when it fails to even allege that Mercer *induced* HISD at all.

**E.    Conclusion**

For the reasons explained above, Richardson-Eagle has failed to state a claim upon which relief can be granted under 31 U.S.C. § 3729(a)(2) and 31 U.S.C. § 3729(a)(3).  Under § 3729(a)(2) the claim must involve government funds, and the relator must identify a false record or statement made or used to get that false claim paid.  <u>Thompson</u>, 125 F.3d at 903.  Richardson-Eagle has not identified a payment from federal funds, or a false statement or certification used to obtain payment.  Richardson-Eagle's § 3729(3) claim fails as a matter of law because, having failed to plead facts sufficient to establish a false or fraudulent claim upon the United States, it has not alleged an unlawful agreement to do so.  <u>See</u> <u>United States ex rel. Graves v. ITT Educational Services</u>, 284 F.Supp.2d 487, 509 (S.D. Tex. 2003), <u>aff'd</u>, 111 Fed.Appx. 296 (5th Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 1869 (2005).  In addition,

---

[7]Even Richardson-Eagle's response does not make the case that HISD's decision to enter the contract was based on Mercer's failure to disclose.  Richardson-Eagle claims only that the "implied representation that Defendants were entitled to government funds for the services provided, and the failure to disclose the secret contingent commissions, constitutes a fraudulent inducement to have HISD enter into the contract in the first place." Response, p. 20.

Richardson-Eagle has failed to plead fraud with particularity as required by Rule 9(b), which is an alternative ground for dismissal that also equates to failure to state a claim for which relief can be granted under Rule 12(b)(6).

## IV.  **Leave to Amend the Complaint**

Richardson-Eagle requests leave to amend its complaint should the court grant Mercer's motion to dismiss.  (Response, p. 22)[8] Leave to amend a complaint "shall be freely given when justice so requires." FED. R. CIV. P. 15(a).  Rule 15(a) requires a trial court "to grant leave to amend 'freely' and the language of this rule 'evinces a bias in favor of granting leave to amend.'"  Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004) (quoting Lyn-Lea Travel Corp. v. American Airlines, 283 F.3d 282, 286 (5th Cir. 2002).  A district court must possess a "substantial reason" to deny a request for leave to amend.  Id. (quoting Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir. 1985).  Decisions on motions to amend are "entrusted to the sound discretion of the district court." Smith, 393 F.3d at 595 (quoting Quintanilla v. Texas Television,

---

[8]Richardson-Eagle's request for leave to amend arguably does not even constitute a motion within the meaning of Rule 15(a). "[A] bare request in an opposition to a motion to dismiss--without any indication of the particular grounds on which the amendment is sought . . . does not constitute a motion with the contemplation of Rule 15(a)."  Willard, 336 F.3d at 387 (quoting Confederate Memorial Association, Inc. v. Hines, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Inc., 139 F.3d 494, 499 (5th Cir. 1998)). See also Foman v. Davis, 83 S.Ct. 227, 230 (1962).

"Among the acceptable justifications for denying leave to amend are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and futility of the amendment." Jamieson, 772 F.2d at 1208. See also Foman, 83 S.Ct. at 230. "A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile." Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co., 195 F.3d 765, 771 (5th Cir. 1999). When, as in this action, the party opposing amendment argues that futility is the reason for denying an amendment to a complaint, the court is usually asked to deny leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint. Jamieson, 772 F.2d at 1208 (citing Pan-Islamic Trade Corp. v. Exxon, 632 F.2d 539, 546 (5th Cir. 1980), cert. denied, 102 S.Ct. 427 (1981)). Consequently, review of such an argument tends to blur the distinction between analysis of the procedural context under Rule 15(a) and analysis of the sufficiency of the complaint under Rule 12(b)(6). Id. at 1208-1209. The court therefore incorporates its earlier analysis in reviewing the request for leave to amend.

Richardson-Eagle was aware of Mercer's objections to its
complaint before submitting its motion for leave to amend. Despite
this, Richardson-Eagle has not demonstrated how it would plead its
claims with greater legal specificity if given the opportunity to
do so, did not proffer a proposed amended complaint, and has not
suggested any additional facts not initially pleaded to cure the
pleading defects raised by Mercer. See Goldstein v. MCI WorldCom,
340 F.3d 238, 254-55 (5th Cir. 2003).   In lieu of analysis and
argument, Richardson-Eagle has offered only an Amended Complaint
and RICO statement from a case in the federal District Court of
New Jersey ("New Jersey complaint") involving Mercer and the same
set of operative facts, but not alleging an FCA violation, and a
statement of additional available background facts ("Factual
Details") relating to the third-party commissions. (Response,
Exhibits C & D)  Richardson-Eagle made no effort to direct this
court to how this additional information would cure its pleading
defects.   Instead, it made a cursory request to amend its
complaint, inviting the court to refer to the attached exhibits,
totaling hundreds of pages, should it be necessary to re-plead the
complaint.[9]

_____

[9]Richardson-Eagle's response only briefly references the
New Jersey complaint and the Factual Details. "To the extent this
Court considers whether or not there are facts, pleadings or
evidence available to address any concerns this Court may have
about needing to replead, Relator attaches and incorporates the

(continued...)

-29-

Although it is not the court's responsibility to make
relator's arguments for it, the court has taken Richardson-Eagle's
invitation and examined these hundreds of pages.  The New Jersey
complaint covers a wide swath of defendants, including insurance
companies and insurance brokers such as Mercer.  While the New
Jersey complaint explains the mechanics of the alleged illegal
activities of the brokers and insurers in detail, it does not
address the FCA deficiencies in this complaint.  The New Jersey
complaint provides no additional source of funding information.
Nor does it allege that Mercer made any false statements, but
instead focuses on non-disclosure of facts.[10]  The only actual
misrepresentations directed at HISD that the additional documents
allege are materials that Mercer provided on its website and to its
own employees, an allegation that is already contained in the

_____

[9](...continued)
Amended Complaint and RICO Statement from MDL No. 1663 [the
New Jersey complaint] . . . .  More specific details regarding the
contingent commissions and their relationship to the FCA is
attached hereto as Exhibit D."  Response, pp. 18-19.  Richardson-
Eagle does not attempt to incorporate any information from the
New Jersey complaint or the Factual Details into its argument,
content to let the court do so for it.

    [10]The New Jersey complaint does contain allegations that Mercer
directed insurers to falsify federal disclosure forms, but these
forms were submitted to the federal government, and their avowed
purpose was to prevent disclosure of the third-party commissions
from clients like HISD.  (Response, Attachment C ¶¶ 207-234)
However, Richardson-Eagle does not make any reference to the
alleged falsification in the instant complaint, and does not make
any arguments based on it in its response.

instant complaint.  (Response, Attachment C ¶¶ 106-108, 207-216)
While the New Jersey complaint and the Factual Details provide this
court an understanding of how the third-party commission scheme
allegedly operated, it does not provide the court any particulars
with which to cure the defects in Richardson-Eagle's complaint.

Richardson-Eagle's response does assert facts not contained in
its complaint, such as the manner of payment, which was by monthly
invoice to HISD.  (Response, p. 20)  However, neither the Factual
Details, the additional background facts alleged in the response,
nor the attached complaint from the New Jersey case provides any
additional factual basis or legal argument that addresses the
inadequacies in Richardson-Eagle's complaint.  It would be futile
to allow relator to amend its complaint when it fails not only to
express to the court how any amendment would cure the legal defects
of its complaint, but to provide any facts with which it could re-
plead a legally sufficient complaint.

Under these circumstances the court is not persuaded that
Richardson-Eagle should receive an opportunity to amend its
complaint.  See McKinney v. Irving Independent School District, 309
F.3d 308, 315 (5th Cir. 2002), cert. denied, 123 S.Ct. 1132 (2003)
(finding no abuse of discretion in the district court's denial of
leave to amend an initial complaint where the plaintiffs failed to
submit a proposed amended complaint in a request for leave to amend
and failed to alert the court to the substance of any proposed

-31-

amendment).   Accordingly, Richardson-Eagle's motion for leave to amend will be denied.

## V.  <u>Conclusion and Order</u>

Because the court concludes that Richardson-Eagle has failed to state a claim upon which relief may be granted, Mercer's Motion to Dismiss (Docket Entry No. 16) is **GRANTED**.  Richardson-Eagle's Alternative Motion for Leave to File an Amended Complaint (Docket Entry No. 20) is **DENIED**.

**SIGNED** at Houston, Texas, on this 3rd day of November, 2005.

_____
                          SIM LAKE
              UNITED STATES DISTRICT JUDGE

-32-