IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA,              §
ex rel. RICHARDSON-EAGLE,              §
INC.,                                  §
                                       §
            Plaintiff,                 §
                                       §
v.                                     §
                                       §     CIVIL ACTION NO. H-05-0411
MARSH & McLENNAN COMPANIES,            §
INC., MARSH, INC., MERCER              §
HUMAN RESOURCES CONSULTING,            §
INC., and MERCER HUMAN                 §
RESOURCES CONSULTING OF                §
TEXAS, INC.,                           §
                                       §
            Defendants.                §

**MEMORANDUM OPINION AND ORDER**

     Pending before the court are Relator Richardson-Eagle, Inc.'s ("Richardson-Eagle") Motion for New Trial and Reconsideration of the Granting of Defendants' Motion to Dismiss and the Denial of Relator's Motion for Leave to File an Amended Complaint (Docket Entry No. 26), the United States' Statement of Interest (Docket Entry No. 25) and Defendants Marsh & McLennan Companies, Inc., Marsh, Inc., Mercer Human Resource Consulting, Inc., and Mercer Human Resource Consulting of Texas, Inc.'s (collectively, "Mercer") Response in Opposition to Relator's Motion for New Trial (Docket Entry No. 27).  For the reasons stated below, Richardson-Eagle's Motion (Docket Entry No. 26) will be granted in part and denied in part.

## I.  Background

### A.    Procedural Background

Richardson-Eagle filed this *qui tam* action on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.[1]  Mercer filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the court granted on November 3, 2005.[2]  Although the United States declined to intervene under 31 U.S.C. § 3730(b)(2), on November 4, 2005, the United States filed a Statement of Interest.[3]  On November 17, 2005, Richardson-Eagle timely filed a Motion for New Trial and Motion for Reconsideration under Federal Rule of Civil Procedure 59.[4]

---

[1]Complaint, Docket Entry No. 3.

[2]Motion to Dismiss, Docket Entry No. 16; Memorandum Opinion and Order, Docket Entry No. 23; Final Judgment, Docket Entry No. 24.

[3]See Notice of Election to Decline Intervention by United States of America, Docket Entry No. 12; Statement of Interest by United States of America, Docket Entry No. 25.  The Statement of Interest by the United States does not affect the court's inquiry.  The United States argued that the court need not rule on the viability of the "implied certification" theory of FCA liability, and that an FCA relator such as Richardson-Eagle need not prove presentment to the federal government, as required by the D.C. Circuit in United States v. ex rel. Totten v. Bombardier Corp., 390 F.3d 488 (D.C. Cir. 2004).  Statement of Interest, Docket Entry No. 25.  Neither the court's previous opinion nor the current opinion reach these two issues.

[4]Motion for New Trial and Reconsideration of the Granting of Defendants' Motion to Dismiss and the Denial of Relator's Motion for Leave to File an Amended Complaint, Docket Entry No. 26.

## B.    Factual Background

The factual background of this case was spelled out in detail in the court's previous opinion, and need not be repeated here.[5] In its Amended Complaint Richardson-Eagle alleged that Mercer became a professional insurance consultant at Houston Independent School District (HISD) in 1999, and with HISD's assistance later expanded its client base to include Katy ISD, Dallas ISD, Lewisville ISD, and Aldine ISD.[6] (Amended Complaint, ¶¶ 11, 109) Richardson-Eagle alleged that Mercer violated Texas law, its fiduciary duties, and the terms of its contract with HISD while acting as an insurance broker for HISD and other school districts. (Amended Complaint, ¶¶ 25-29, 43-66, 128)

The violations of Texas law allegedly stem from Mercer's acting as a broker without holding a Texas life and health insurance counselor license.  (Amended Complaint, ¶¶ 25-29)  The fiduciary and contract violations alleged by Richardson-Eagle stem from Mercer's receipt of secret contingent commissions that were not disclosed to HISD and other school districts.  (Amended

---

[5]Memorandum Opinion and Order, Docket Entry No. 23, pp. 2-4.

[6]Marsh & McLennan Companies, Inc. ("MMC") is the parent umbrella for the other defendants.  (Amended Complaint, ¶ 10) Marsh Inc. ("Marsh") is it's wholly owned subsidiary.  Mercer Human Resources  Consulting,  Inc.  (formerly  William  M.  Mercer, Incorporated) and Mercer Human Resources Consulting of Texas, Inc. (formerly  William  M.  Mercer  of  Texas,  Incorporated)  were  the conduits through which MMC and Marsh interacted with HISD and other Texas school districts.  Id.  The court will refer to all defend-ants jointly as ("Mercer").

Complaint, ¶¶ 43-66)  Mercer allegedly rigged the bids that it obtained from insurance companies to ensure that the best bids came from insurance companies with which it had secret contingent commission agreements.  (Amended Complaint, ¶¶ 83-90)  These agreements allegedly garnered Mercer secret contingent commissions from the insurance companies for steering school district business toward these insurance companies.  Id.

## II.   Motion to Alter or Amend Judgment

Although relator titles its pleading "Motion for New Trial and Reconsideration," the motion is more properly characterized as a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e).  See St. Paul Mercury Insurance Co. v. Fair Grounds Corp., 123 F.3d 336, 339 (5th Cir. 1997).  The court may grant the motion if the moving party demonstrates any of the following:  (1) the judgment was based on a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; or (3) the motion is justified by an intervening change in the controlling law.  Schiller v. Physicians Resource Group, Inc., 342 F.3d 563, 567-68 (5th Cir. 2003).[7]

With respect to its Motion for Leave to Amend, Richardson-Eagle argues that the court made a manifest error of fact and/or

---

[7]Some courts have also recognized that a Rule 59(e) motion may be granted in order to prevent manifest injustice.  See, e.g., Flynn v. Terrebonne Parish School Board, 348 F.Supp.2d 769, 771 (E.D. La. 2004).

law because leave to amend should have been granted.  The court
will partially grant the Rule 59 motion based on an error related
to Richardson-Eagle's Amended Complaint.  Richardson-Eagle filed a
Motion for Leave to File its First Amended Complaint on October 31,
2005.  (Docket Entry No. 22)  The motion was entered onto the
docket on November 2, 2005.  The court entered a Final Judgment
dismissing the case on November 3, 2005, unaware that just the day
before Richardson-Eagle's Motion for Leave to Amend its Complaint
had been docketed.[8]  Richardson-Eagle's Motion argued that it
should be given leave to amend because Federal Rule of Civil
Procedure 15(a) states that "leave to amend should be freely given
when justice so requires."  Richardson-Eagle attached a proposed
First Amended Complaint to its Motion for Leave to Amend.

Rule 15(a) states that a party "may amend the party's pleading
once as a matter of course at any time before a responsive pleading
is served."  A Rule 12(b)(6) motion to dismiss is not a responsive
pleading.  FED. R. CIV. P. 7(a).  In this case, Mercer has not filed
an answer, instead filing a Rule 12(b)(6) motion to dismiss.[9]

---

[8]A careful attorney, knowing that a Motion to Dismiss was
pending, would have been well served to deliver a copy of a Motion
for Leave to File its First Amended Complaint to chambers.  Had
Richardson-Eagle done so, the court would have been aware of its
motion, eliminating the necessity of a Rule 59 motion, and the
attendant delays in disposition of this case.

[9]Richardson-Eagle's Motion incorrectly stated that Mercer "has
appeared and answered."  Relator's Motion for Leave to File First
Amended Complaint, Docket Entry No. 22, ¶ 3.

Therefore, Richardson-Eagle has the right to amend once as a matter of course, and was not required to request leave of the court to amend its complaint.

Because Richardson-Eagle's Response to Mercer's Motion to Dismiss relied on the adequacy of its pleadings and made a perfunctory request for leave to amend without informing the court of the substance of its proposed amendment or furnishing the court with a proposed amended complaint, the court was not required to grant its request for leave to amend.  See McKinney v. Irving Independent School District, 309 F.3d 308, 315 (5th Cir. 2002); Spiller v. Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997).  However, actually furnishing the court with a proposed Amended Complaint does require that the court grant Richardson-Eagle leave to amend.  McKinney, 308 F.3d at 315.  Richardson-Eagle had the right to file the amended complaint "as a matter of course."  FED. R. CIV. P. 15(a).  The court will therefore grant Richardson-Eagle's Motion for Leave to File its Amended Complaint and will consider Richardson-Eagle's proposed Amended Complaint in analyzing Mercer's Motion to Dismiss.[10]

---

[10]Although the court will not alter the Final Judgment, granting Richardson-Eagle's Motion for Reconsideration for Leave to File an Amended Complaint is no mere procedural exercise.  By granting Richardson-Eagle's Motion to Reconsider Denial of Leave to File its First Amended Complaint and considering the Amended Complaint, the court engages in a substantive analysis of the First Amended Complaint under the legal standard of Federal Rule of Civil Procedure 12(b)(6) rather than reviewing the dismissal under the more restrictive standard of Federal Rule of Civil Procedure 59.

### III.   Motion to Dismiss

**A.   Standard of Review**

1.   Rule 12(b)(6)

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted.   FED. R. CIV. P. 12(b)(6).   In considering a motion to dismiss under Rule 12(b)(6) the district court must accept the factual allegations in the complaint as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S.Ct. 2665 (2002).   "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."   Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 998 (2002) (quoting Hishon v. King & Spaulding, 104 S.Ct. 2229, 2232 (1984)).   See also Conley v. Gibson, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

"However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a

-7-

motion to dismiss.'"   Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, 252 F.3d 781, 786 (5th Cir.) (quoting Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)), cert. denied, 122 S.Ct. 464 (2001). Complaints "'must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 3 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1216 (2d ed. 1990)).   While dismissal of a claim under Rule 12(b)(6) is generally disfavored, the court should exercise its power to dismiss a complaint if it lacks an allegation regarding an element required to obtain relief.   Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citations omitted).

   2.  Rule 9(b)

   "The complaint in a False Claims Act suit must fulfill the requirements of Rule 9(b)."   United States ex rel. Russell v. Epic Healthcare Management Group, 193 F.3d 304, 308 (5th Cir. 1999). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of a mind of a person may be averred generally."  A plaintiff pleading

fraud must set forth the "'time, place and contents of the false misrepresentations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" Russell, 193 F.3d at 308 (quoting Williams v. WMX Technologies, Inc., 112 F.3d 175, 177 (5th Cir. 1997)).  In other words, the plaintiff must specify the "who, what, when, where and how of the alleged fraud."  United States ex rel. Willard v. Humana Health Plan of Texas, Inc., 336 F.3d 375, 384 (5th Cir. 2003) (citations omitted).  A dismissal for failure to state fraud with particularity is a dismissal on the pleadings for failure to state a claim under Rule 12(b)(6).  Russell, 193 F.3d at 308.

**B.   Analysis**

The court's original order dismissed Richardson-Eagle's case under Rule 12(b)(6) because it failed to plead the payment of federal funds, a requirement for a "claim" under the False Claims Act; it failed to allege a false statement or record used to get a claim paid; fraud in the inducement was not adequately pleaded; and fraud was not pleaded with particularity as required by Federal Rule of Civil Procedure 9(b).

Richardson-Eagle's motion for reconsideration argues that its Amended Complaint satisfies the legal deficiencies noted in the court's opinion.  Specifically, Richardson-Eagle argues that its amended complaint traces the money directly from the Federal Government to defendants, details implied and express certifi-

cations by defendants, and adequately pleads fraud in the inducement.[11]

### 1.  The FCA

Under the FCA "a private party may sue on behalf of the government 'to recover for false claims made by the defendants to secure payment by the [g]overnment.'"  <u>United States ex rel. Williams v. Bell Helicopters Textron, Inc.</u>, 417 F.3d 450, 453 (5th Cir. 2005) (quoting <u>United States ex rel. Doe v. Dow Chemical Co.</u>, 343 F.3d 325, 329 (5th Cir. 2003)).

Richardson-Eagle's Amended Complaint asserts causes of action under § 3729(a)(1),(2) and (3).  Under § 3729(a)(1) the relator must allege that the defendant "knowingly" made "a false or fraudulent claim" to the United States Government."  <u>United States ex rel. Riley v. St. Luke's Episcopal Hospital</u>, 355 F.3d 370, 375 (5th Cir. 2004).  To state a subsection (a)(2) claim, the relator must allege that the defendant "knowingly" made or used "a false record or statement to get a false claim" paid by the government. <u>Id.</u>  <u>See also</u> <u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899, 903 (5th Cir. 1997).  To state a claim under § 3729(a)(3) the plaintiff must show (1) that the defendant agreed with one or more persons to get a false or fraudulent claim allowed or paid by the United States, and (2) that

---

[11]Motion for Reconsideration, Docket Entry No. 26, p. 3.

one or more conspirators performed any act to effect the object of the conspiracy.  United States ex rel. Graves v. ITT Educational Services, Inc., 284 F.Supp.2d 487, 509 (S.D. Tex. 2003).

   2.  Certification

    The classic FCA violation of "government contractors' billing for nonexistent or worthless goods or charging exorbitant prices for delivered goods" is not alleged here.  See United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 460 (5th Cir. 1977).  Rather, Richardson-Eagle proceeds under a certification theory to allege an FCA violation.  This type of FCA violation occurs when payment of a claim is conditioned upon a claimant's certification of compliance with a federal statute, regulation, or contractual term that is a prerequisite to payment.  Thompson, 125 F.3d at 902.

    Express certification, where a defendant actually certifies compliance with a statute or regulation, has been recognized by the Fifth Circuit.  Id.  Implied certification, which means "nothing more than . . . [i]f the government defines its bargain in a manner that requires adherence to a statute or regulation, compliance with that statute or regulation is implied by virtue of a request for payment," has not been recognized by the Fifth Circuit.  Willard, 336 F.3d at 382.  Richardson-Eagle asserts that its Amended Complaint details both express and implied certifications, but its

Amended Complaint fails to allege facts to satisfy either type of certification.

Richardson-Eagle argues that its Amended Complaint alleged two categories of false certifications by Mercer.   First, false certification in relation to the contract, which it claims required Mercer to certify non-receipt of separate commissions.[12]   Second, implied false certification in relation to Mercer's acting as HISD's broker without the life and health counselor license required by Texas law.[13]   Even assuming, arguendo, that the implied theory of certification is valid in the Fifth Circuit, Richardson-Eagle's complaint fails to allege an FCA violation.

Richardson-Eagle bolsters its contract false certification argument in the Amended Complaint by articulating Mercer's communications to HISD regarding its role in representing its clients and serving as its "exclusive agent of record" in verbal communications, websites, and other materials.  (Amended Complaint, ¶¶ 17-19, 67-70)  These representations regarding Mercer's role are relevant if the contract makes Mercer's payment contingent on its obligation to disclose receipt of other commissions.

---

[12]Motion for Reconsideration, Docket Entry No. 26, pp. 6-7. Although Richardson-Eagle's Motion for Reconsideration states that most of the express certifications come from the contract, its pleadings and Amended Complaint are unclear whether Richardson-Eagle also argues implied certification related to the contract.

[13]Id.

Richardson-Eagle argues that the contract requires Mercer to
disclose the existence of secret contingent commissions received
from insurance companies, and that the Amended Complaint adequately
pleads this by specifically detailing the contractual provisions
requiring the disclosure.[14]  The contract provisions at issue state:

> **CONFLICTS OF INTEREST**.  Consultant agrees to provide 30
> days prior written notice to Client detailing any
> arrangement or agreement between Consultant and any 3rd
> party currently existing, where the arrangement or
> agreement is related to the Services provided under this
> Agreement and where such relationship creates or
> reasonably could be anticipated to create an opportunity
> for Consultant to benefit financially or in any other
> material manner from Client's contract with the 3rd
> party.

Health and Welfare Benefits Consulting and Administration
Agreement, Response, Docket Entry No. 20, Attachment B, § 18.

> **DISCLOSURE**.  Consultant acknowledges that it must
> immediately disclose . . . any agreement between it and
> any third party whereby consideration appears to be
> wholly or partly for any commission . . . which have been
> given as a result of entering into this Agreement.
> Consultant acknowledges that final determination of its
> violation of this section resides . . . [with] Client.
> Consultant . . . agrees that the violation of this
> section as determined by Client provides Client, at
> Client's option, with the remedy of (i) a refund by
> Consultant to Client, the refund consisting of the value
> of the Gift . . . ; or (ii) termination of this Agreement
> For Cause . . . .   Consultant further acknowledges its
> duty to confirm  in writing to Client its compliance with
> this Section 19, from time to time, upon request by
> Client.

Id. at § 19.  The Amended Complaint contains the cited contract
provisions as well as contract provisions enumerating Mercer's role

[14]Motion for Reconsideration, Docket Entry No. 26, p. 6.

and a termination clause.   (Amended Complaint, ¶¶ 21-22, 44)   It

also details allegations regarding Mercer's active concealment from

HISD of its receipt of secret contingent commissions from various

insurance companies.[15]   (Amended Complaint, ¶¶  43-66)   The Amended

Complaint further states that each time Mercer submitted an invoice

it represented to HISD that no other compensation had been received

related to its services.   (Amended Complaint, ¶ 127)

     The contract does not support Richardson-Eagle's arguments.

The remedies for nondisclosure provided by the contract are refund

of the value of the gift and contract termination.   There is no

allegation that HISD exercised its contractual right to require

Mercer to confirm its compliance with the contractual provision at

issue in writing as a condition for payment.   This omission

vitiates the basis for express certification.  Furthermore, as the

court discussed in its previous Memorandum Opinion and Order, the

contract does not provide the remedy of withholding payments for

services that Mercer had already performed, which undermines the

basis  for  even  implied  certification  --  that  payment  was

conditioned on the disclosures.   "The False Claims Act does not

---

[15]Richardson-Eagle takes issue with the court's conflation of
imbedded commissions that were known to HISD and rebated to HISD,
and  the  secret  contingent  commissions,  which  were  actively
concealed from HISD.   Motion for Reconsideration, Docket Entry
No. 26, pp. 6-7.   The Amended Complaint clarifies the difference
between these two types of commissions, and the court notes the
difference.   This  distinction,  however,  was  not  and  is  not
dispositive of the court's finding that Richardson-Eagle has not
stated a claim under the FCA.

create liability merely for a . . . provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe."  <u>Willard</u>, 336 F.3d at 381.

Richardson-Eagle has failed to plead that Mercer expressly certified compliance with the contractual provisions requiring disclosure of other commissions received, and has failed adequately to plead that disclosure of such commissions was a condition of payment under the contract.  Therefore, the cited provisions of the contract do not provide a basis for FCA liability.

The second basis under which Richardson-Eagle alleges FCA false certification involves Mercer's acting as broker for HISD without being licensed as a life and health counselor.  Richardson-Eagle argues that "HISD's payment was conditioned on Defendants having the proper license because without it, Defendants are not entitled to receive any funds from any entity or person in Texas including HISD.  Likewise HISD is not authorized to pay defendants for their services if they do not have the proper licenses."[16]

---

[16]Motion for Reconsideration, Docket Entry No. 26, p. 7.  This argument essentially echoes the statement in the Amended Complaint where Richardson-Eagle asserts the following:

> The necessary Texas insurance licenses are a prerequisite to receiving payment from the government for the services provided by Defendants and the absence of those licenses is a violation of the False Claims Act (the "FCA").

(continued...)

-15-

Despite Richardson-Eagle's attempt to equate an alleged state statutory violation to an FCA violation, the Fifth Circuit has explicitly held that "claims for services rendered in violation of statute do not necessarily constitute false or fraudulent claims under the FCA." Thompson, 125 F.3d at 902.  It is only when the other party conditions payment of the claim upon the claimant's certification of compliance with the statute or regulation that an FCA violation occurs. Id. The Amended Complaint does not allege that HISD or the other school districts conditioned any payment to Mercer on Mercer's compliance with Texas statutes allegedly requiring it to hold the life and health insurance counselor license.  The Amended Complaint contains no allegations that Mercer misrepresented its license status to HISD.  This distinguishes the instant case from Riley, 355 F.3d at 378-79, where relator adequately alleged that the defendant actively concealed the fact that a non-licensed individual performed and billed for the practice of medicine.

While replete with allegations that Mercer attempted to hide its receipt of secret contingent commissions from HISD, the Amended Complaint does not allege that Mercer concealed its licensure

_____

16(...continued)
Defendants were ineligible to receive any of the payments received from school districts and, in part, from the federal government.  Thus, Defendants violated the FCA.

Relator's First Amended Complaint, Docket Entry No. 22, ¶¶ 125-26.

status from HISD or that HISD required Mercer to be licensed as a
life and health counselor as a prerequisite to payment.

### 3.   Fraud in the Inducement

Richardson-Eagle also alleges FCA violations based on a fraud
in the inducement theory.   Fraud in the inducement in the FCA
context occurs when a defendant enters into a contract with no
intention of performing the contract, or when the contract was
originally obtained by false statements or fraudulent conduct. See
United States ex rel. Marcus v. Hess, 63 S.Ct. 379 (1943);
Willard, 336 F.3d at 384.   The fraudulent conduct must have been
material  to  the  decision  to  enter  into  the  contract.   See
United States v. Medica-Rents Co., 285 F.Supp.2d 742, 769 (N.D.
Tex. 2003); United States ex rel. Wilkins v. North American
Construction Corp., 173 F.Supp.2d 601, 619-30 (S.D. Tex. 2001).
See also United States v. Southland Management Corp., 288 F.3d 665,
675-78 (5th Cir.) (detailing  debate  over  required  degree  of
materiality), vacated by granting of reh'g en banc, 307 F.3d 352
(5th Cir. 2002) (en banc).

Richardson-Eagle proffers paragraphs 113 and 134 through 137
of its Amended Complaint as sufficient to meet the standard for
pleading fraud in the inducement.[17]  Although the Amended Complaint
does explicitly allege fraud in the inducement, it does not plead

---

[17]Motion for Reconsideration, Docket Entry No. 26, pp. 7-8.

an adequate factual or legal foundation.   The Amended Complaint

fails to allege that HISD would not have entered into the contract

with Mercer had it known either that Mercer was lacking the life

and health insurance counselor license or that Mercer was receiving

secret contingent commissions from the insurance companies.   The

Amended Complaint also fails in pleading the alleged fraud in the

inducement with the particularity required by Rule 9(b).   The

deficiencies noted in the court's prior opinion remain.[18]

### 4.  Federal Funds

Because the court concludes that Richardson-Eagle has failed

to plead an FCA cause of action under false certification or fraud

in the inducement, it need not reach the issue of whether the

Amended Complaint adequately pleads federal monies used to pay

Mercer.

### IV.  Conclusion and Order

Because Richardson-Eagle filed a Proposed First Amended

Complaint before the court's Final Judgment dismissing its case,

Richardson-Eagle's Motion for Reconsideration of the Denial of

---

[18]"The complaint does not allege who was involved in the contract negotiations, or where and when the negotiations took place.   There are no facts alleged as to what was said before, during, or after the contract negotiations to indicate that HISD would not have entered into the contract had it known of Mercer's unlicensed status or its receipt of third-party commissions." Memorandum Opinion and Order, Docket Entry No. 23, p. 25.

Relator's Motion to File an Amended Complaint (Docket Entry No. 26) is **GRANTED**, and leave to file its First Amended Complaint is **GRANTED**.    However, because Richardson-Eagle's First Amended Complaint fails to state a claim upon which relief can be granted, the court declines to disturb its prior Final Judgment dismissing this action, and Richardson-Eagle's Motion for Reconsideration of Defendants' Motion to Dismiss (Docket Entry No. 26) is therefore **DENIED**.

    **SIGNED** at Houston, Texas, on this 30th day of December, 2005.

                                        SIM LAKE
                           UNITED STATES DISTRICT JUDGE